FILED BY FAX
PURSUANT TO LOCAL RULES

Brian A. Carpenter (CA Bar No. 262349)
BUTHER JOE & CARPENTER, LLC
1700 Pacific Avenue, Suite 2390
Dallas, TX 75201
Telephone: (214) 466-1273
Facsimile: (214) 635-1829
Brian.Carpenter@BJCIPLaw.com

Attorneys for Plaintiffs
VIA TECHNOLOGIES, INC.,
a Taiwan Corporation;
VIA TECHNOLOGIES, INC.,
a California corporation;
CENTAUR TECHNOLOGY, INC.,
a California Corporation; and
VIA TECHNOLOGIES CPU, INC.,
a Texas Corporation.



ORIGINAL
FILED

2011 MAR -9  P 1: 02

RICHARD W. WIEKING
CLERK. U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA



E-filing

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

EMC

| | |
|---|---|
| VIA TECHNOLOGIES, INC.,<br>a Taiwan corporation;<br>VIA TECHNOLOGIES, INC.,<br>a California corporation;<br>CENTAUR TECHNOLOGY, INC.,<br>a California corporation; and<br>VIA TECHNOLOGIES CPU, INC.,<br>a Texas corporation;<br><br>Plaintiffs,<br><br>v.<br><br>AFTG-TG, L.L.C.,<br>a Wyoming limited liability company,<br>PHILLIP M. ADAMS & ASSOCIATES,<br>L.L.C., a Utah limited liability company,<br><br>Defendants. | CASE NO. cv11—1133<br><br>COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF PATENTS<br><br>JURY DEMAND |

---

1.    Plaintiffs VIA TECHNOLOGIES, INC., a Taiwan corporation, VIA TECHNOLOGIES, INC., a California corporation, CENTAUR TECHNOLOGY, INC., a California corporation, and VIA TECHNOLOGIES CPU, INC., a Texas corporation (collectively, "Plaintiffs") by and through their attorneys allege as follows:

## THE PARTIES

2.    Plaintiff VIA Technologies, Inc. ("VIA Technologies") is a Taiwan corporation with its principal place of business at 1F, 531 Chung-Cheng Rd., Hsin-Tien, Taipei, Taiwan.

3.    Plaintiff VIA Technologies, Inc., a California corporation ("VIA USA"), has a principal place of business at 940 Mission Court, Fremont, CA 94539, and is a wholly owned subsidiary of VIA Technologies.

4.    Plaintiff Centaur Technology, Inc. ("Centaur") is a California corporation with its principal place of business at 7600-C N. Capital of Texas Highway, Suite 300, Austin, Texas 78731, and is a wholly owned subsidiary of VIA Technologies.

5.    Plaintiff VIA Technologies CPU, Inc. ("VIA CPU") is a Texas corporation with its principal place of business at 701 Highlander Blvd., Suite 300, Arlington, Texas 76015, and is a wholly owned subsidiary of VIA Technologies.

6.    On information and belief, Defendant AFTG-TG, L.L.C. ("AFTG") is a Wyoming limited liability company with its principal place of business in Wyoming.

7.    On information and belief, Defendant Phillip M. Adams & Associates ("PMMA") is a Utah limited liability company with its principal place of business now in Wyoming.

## JURISDICTION AND VENUE

8.    VIA Technologies, VIA USA, Centaur, and VIA CPU (collectively "Plaintiffs") file this Complaint against AFTG and PMAA (collectively "Defendants") pursuant to the patent laws of the United States, Title 35 of the United States Code, with a specific remedy sought

based upon the laws authorizing actions for declaratory judgment in the federal courts of the United States, 28 U.S.C. §§ 2201 and 2202.

9. This Court has subject matter jurisdiction over this action, which arises under the patent laws of the United States, pursuant to 28 U.S.C. §§ 1331, 1338(a), under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and, as to the declaratory judgment claim relating to misappropriation of trade secret, 28 U.S.C. § 1367(a).

10. Personal jurisdiction is proper pursuant to the United States Constitution and California's Long Arm Statute Cal. Civ. Proc. 410.10, and venue in the District is proper pursuant to 28 U.S.C. §§ 1391(c) and 1400(b). Upon information and belief, Defendants conduct business in this District, AFTG or PMAA reside and/or do business in this District, and a substantial part of the events that give rise to this action occurred in this District. Upon information and belief, Defendants have and continue to transact business in this District by providing consulting services, negotiating licensing arrangements, and participating in litigation in and directed at companies located in this District.

## INTRADISTRICT ASSIGNMENT

11. This action is properly filed in the San Francisco Division of the Northern District of California because VIA USA does business within the San Francisco Division.

## EXISTENCE OF AN ACTUAL CONTROVERSY

12. There is an actual controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202.

13. Defendants have repeatedly demanded that VIA Technologies, VIA USA, Centaur and VIA CPU enter into a royalty-bearing license for the AFTG and PMAA patents (defined below). Defendants are claiming that certain VIA Technologies' products sold by VIA USA in the United States, and, improperly, that Centaur and VIA CPU products (although these

companies do not sell products), infringe one or more claims of the AFTG and PMAA patents, and have further communicated to Plaintiffs that if they do not take a license to the AFTG and PMAA patents, Plaintiffs may be subject to substantial liabilities.

14.     On October 18, 2010, AFTG and PMAA filed a Complaint for Patent Infringement against eight defendants including VIA Technologies, VIA USA, Centaur and VIA CPU, in the United States District Court for the District of Wyoming ("the Wyoming Action").  On October 25, 2010, AFTG and PMAA filed an Amended Complaint, and a true and correct copy of the Amended Complaint in the Wyoming Action is attached hereto as Exhibit A.

15.     In the Wyoming Action, PMAA and AFTG asserted six PMAA patents (referenced in Paragraph 1 of the Amended Complaint (Exhibit A) (the "PMAA patents")) and six AFTG patents (referenced in Paragraph 2 of the Amended Complaint, (the "AFTG patents")). The Amended Complaint filed in the Wyoming Action alleges that the PMAA and AFTG patents collectively disclose computer hardware and software technologies that detect and address the random destruction or corruption of data in disk drives used by computers, as well as apparatuses, systems and methods for preventing data corruption due to time-gap defects in computer systems. *See* Exhibit A at ¶¶ 3-6.

16.     In the Wyoming Action, PMAA and AFTG also allege that the named defendants have purportedly "infringed various claims of each of the patents-in-suit in violation of 35 U.S.C. § 271 through, among other activities, the manufacture, use, importation, sale and/or offer for sale of computer chips, motherboards, computers and other products, as well as using infringing methods including but not limited to testing of Defendants' products as a part of the manufacturing process." *See* Exhibit A at ¶ 25.

17. PMAA and AFTG further allege in the Wyoming Action that "all Defendants have had actual and/or constructive notice of their infringement of the patents-in-suit, including actual precomplaint notice." *See* Exhibit A, ¶ 26.

18. In addition to their patent infringement claims, PMAA and AFTG also alleged in the Amended Complaint that VIA Technologies, VIA USA, Centaur, and VIA CPU misappropriated some ill-defined alleged trade secrets. *See* Exhibit A, ¶ 34.

19. VIA Technologies, VIA USA, Centaur and VIA CPU categorically deny Defendants' allegations that they infringe or have infringed the PMAA and AFTG patents, willfully or otherwise, and further deny that any misappropriation of trade secret occurred.

20. VIA Technologies, VIA USA, Centaur and VIA CPU further contend that the PMAA patents and AFTG patents are invalid and/or unenforceable.

21. VIA Technologies, VIA USA, Centaur and VIA CPU are informed and believe, and based thereon allege that, PMAA and AFTG filed the Wyoming Action in response to the instant action as a means of improper forum shopping and to wrongfully divest this Court of jurisdiction to hear the complete case and controversy between the parties.

22. On March 7, 2011, the Wyoming Court dismissed all claims against VIA Technologies, VIA USA, Centaur, and VIA CPU without prejudice as shown by the Order attached as Exhibit B.

23. Based upon the above facts, there is an actual and justifiable controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202.

## FIRST CLAIM

## DECLARATORY JUDGMENT REGARDING THE 5,983,002 PATENT

24. VIA Technologies, VIA USA, Centaur and VIA CPU hereby restate and reallege the allegations set forth in paragraphs 1 to 23 and incorporate them by reference.

25.     Phillip M. Adams ("Adams") is listed as the inventor of United States Patent No. 5,983,002 (the "'002 Patent"), entitled "Defective Floppy Diskette Controller Detection Apparatus and Method".

26.     PMAA purports to own by assignment all rights, title, and interests in the '002 Patent.

27.     VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that no valid and enforceable claim of the '002 patent is infringed by VIA USA, Centaur and VIA CPU.

28.     VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration of the '002 patent is invalid because it fails to satisfy the conditions and requirements for patentabilty as set forth, *inter alia*, in Sections 101, 102, 103 and/or 112 of the title 35 of the United States Code.

## SECOND CLAIM

## DECLARATORY JUDGMENT REGARDING THE 6,401,222 PATENT

29.     VIA Technologies, VIA USA, Centaur and VIA CPU hereby restate and reallege the allegations set forth in paragraphs 1 to 28 and incorporate them by reference.

30.     Adams is listed as the inventor on the face of United States Patent No. 6,401,222 (the "'222 Patent") entitled "Defective Floppy Diskette Controller Detection Apparatus and Method."

31.     PMAA purports to own by assignment all rights, title, and interests in the '222 Patent.

32.     VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that no valid and enforceable claim of the '222 patent is infringed by VIA Technologies, VIA USA, Centaur and VIA CPU.

33.     VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration of the '222 patent is invalid because it fails to satisfy the conditions and

requirements for patentabilty as set forth, *inter alia*, in Sections 101, 102, 103 and/or 112 of the title 35 of the United States Code.

### THIRD CLAIM

### DECLARATORY JUDGMENT REGARDING THE 6,687,858 PATENT

34. VIA Technologies, VIA USA, Centaur and VIA CPU hereby restate and reallege the allegations set forth in paragraphs 1 to 33 and incorporate them by reference.

35. Adams is listed as the inventor on the face of United States Patent No. 6,687,858 (the "'858 Patent") entitled "Software-Hardware Welding System."

36. PMAA purports to own by assignment all rights, title, and interests in the '858 Patent.

37. VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that no valid and enforceable claim of the '858 patent is infrinted by VIA Technologies, VIA USA, Centaur and VIA CPU.

38. VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that the '858 patent is invalid because it fails to satisfy the conditions and requirements for patentabilty as set forth, *inter alia*, in Sections 101, 102, 103 and/or 112 of the title 35 of the United States Code.

### FOURTH CLAIM

### DECLARATORY JUDGMENT REGARDING THE 7,251,752 PATENT

39. VIA Technologies, VIA USA, Centaur and VIA CPU hereby restate and reallege the allegations set forth in paragraphs 1 to 38 and incorporate them by reference.

40. Adams is listed as the inventor on the face of United States Patent No. 7,251,752 (the "'752 Patent") entitled "Computerized Product Improvement Apparatus and Method."

41. PMAA purports to own by assignment all rights, title, and interests in the '752 Patent.

42. VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that no valid and enforceable claim of the '752 patent is infringed by VIA Technologies, VIA USA, Centaur and VIA CPU.

43. VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that the '752 patent is invalid because it fails to satisfy the conditions and requirements for patentability as set forth, *inter alia*, in Sections 101, 102, 103, and/or 112 of Title 35 of the United States Code.

## FIFTH CLAIM

## DECLARATORY JUDGMENT REGARDING THE 7,069,475 PATENT

44. VIA Technologies, VIA USA, Centaur and VIA CPU hereby restate and reallege the allegations set forth in paragraphs 1 to 43 and incorporate them by reference.

45. Adams is listed as the inventor on the face of United States Patent No. 7,069,475 (the "'475 Patent"), entitled "Software-Hardware Welding System."

46. PMAA purports to own by assignment all rights, title, and interests in the '475 Patent.

47. VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that no valid and enforceable claim of the '475 patent is infringed by VIA Technologies, VIA USA, Centaur and VIA CPU.

48. VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that the '475 patent is invalid because it fails to satisfy the conditions and requirements for patentability as set forth, *inter alia*, in Sections 101, 102, 103, and/or 112 of Title 35 of the United States Code.

## SIXTH CLAIM

### DECLARATORY JUDGMENT REGARDING THE 7,069,601 PATENT

49.     VIA Technologies, VIA USA, Centaur and VIA CPU hereby restate and reallege the allegations set forth in paragraphs 1 to 48 and incorporate them by reference.

50.     Adams is listed as the inventor on the face of United States Patent No. 7,069,601 (the "'601 Patent") entitled "Read-Write Function Separation Apparatus and Method."

51.     PMAA purports to own by assignment all rights, title, and interests in the '601 Patent.

52.     VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that no valid and enforceable claim of the '601 patent is infringed by VIA Technologies, VIA USA, Centaur and VIA CPU.

53.     VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that the '601 patent is invalid because it fails to satisfy the conditions and requirements for patentability as set forth, *inter alia*, in Sections 101, 102, 103, and/or 112 of Title 35 of the United States Code.

## SEVENTH CLAIM

### DECLARATORY JUDGMENT REGARDING THE 6,691,181 PATENT

54.     VIA Technologies, VIA USA, Centaur and VIA CPU hereby restate and reallege the allegations set forth in paragraphs 1 to 53 and incorporate them by reference.

55.     Adams is listed as the inventor on the face of United States Patent No. 6,691,181 (the "'181 Patent") entitled "Programmatic Time-Gap Defect Detection Apparatus and Method."

56.     AFTG purports to own by assignment all rights, title, and interests in the '181 Patent.

57.     VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that no valid and enforceable claim of the '181 patent is infringed by VIA Technologies, VIA USA, Centaur and VIA CPU.

58.     VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that the '181 patent is invalid because it fails to satisfy the conditions and requirements for patentability as set forth, *inter alia*, in Sections 101, 102, 103, and/or 112 of Title 35 of the United States Code.

## EIGHTH CLAIM

### DECLARATORY JUDGMENT REGARDING 7,249,203 PATENT

59.     VIA Technologies, VIA USA, Centaur and VIA CPU hereby restate and reallege the allegations set forth in paragraphs 1 to 58 and incorporate them by reference.

60.     Adams is listed as the inventor on the face of United States Patent No. 7,249,203 (the "'203 Patent"), entitled "Programmatic Time-Gap Defect Detection Apparatus and Method."

61.     AFTG purports to own by assignment all rights, title, and interests in the '203 Patent.

62.     VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that no valid and enforceable claim of the '203 patent is infringed by VIA Technologies, VIA USA, Centaur and VIA CPU.

63.     VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that the '203 patent is invalid because it fails to satisfy the conditions and requirements for patentability as set forth, *inter alia*, in Sections 101, 102, 103, and/or 112 of Title 35 of the United States Code.

## NINTH CLAIM

### DECLARATORY JUDGMENT REGARDING 7,472,207 PATENT

64.     VIA Technologies, VIA USA, Centaur and VIA CPU hereby restate and reallege the allegations set forth in paragraphs 1 to 63 and incorporate them by reference.

65.    Adams is listed as the inventor on the face of United States Patent No. 7,472,207 (the "'207 Patent"), entitled "Optimized-Incrementing, Time-Gap Defect Correction Apparatus and Method."

66.    AFTG purports to own by assignment all rights, title, and interests in the '207 Patent.

67.    VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that no valid and enforceable claim of the '207 patent is infringed by VIA Technologies, VIA USA, Centaur and VIA CPU.

68.    VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that the '207 patent is invalid because it fails to satisfy the conditions and requirements for patentability as set forth, *inter alia*, in Sections 101, 102, 103, and/or 112 of Title 35 of the United States Code.

## TENTH CLAIM

### DECLARATORY JUDGMENT REGARDING 6,842,802 PATENT

69.    VIA Technologies, VIA USA, Centaur and VIA CPU hereby restate and reallege the allegations set forth in paragraphs 1 to 68 and incorporate them by reference.

70.    Adams is listed as the inventor on the face of United States Patent No. 6,842,802 (the "'802 Patent") entitled "Programmatic Time-Gap Correction Apparatus and Method."

71.    AFTG purports to own by assignment all rights, title, and interests in the '802 Patent.

72.    VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that no valid and enforceable claim of the '802 patent is infringed by VIA Technologies, VIA USA, Centaur and VIA CPU.

73.    VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that the '802 patent is invalid because it fails to satisfy the conditions and

requirements for patentability as set forth, *inter alia*, in Sections 101, 102, 103, and/or 112 of Title 35 of the United States Code.

## ELEVENTH CLAIM

## DECLARATORY JUDGMENT REGARDING 7,366,804 PATENT

74. VIA Technologies, VIA USA, Centaur and VIA CPU hereby restate and reallege the allegations set forth in paragraphs 1 to 73 and incorporate them by reference.

75. Adams is listed as the inventor on the face of United States Patent No. 7,366,804 (the "'804 Patent") entitled "Programmatic Time-Gap Defect Correction Apparatus and Method."

76. AFTG purports to own by assignment all rights, title, and interests in the '804 Patent.

77. VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that no valid and enforceable claim of the '804 patent is infringed by VIA Technologies, VIA USA, Centaur and VIA CPU.

78. VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that the '804 patent is invalid because it fails to satisfy the conditions and requirements for patentability as set forth, *inter alia*, in Sections 101, 102, 103, and/or 112 of Title 35 of the United States Code.

## TWELFTH CLAIM

## DECLARATORY JUDGMENT REGARDING 7,653,766 PATENT

79. VIA Technologies, VIA USA, Centaur and VIA CPU hereby restate and reallege the allegations set forth in paragraphs 1 to 78 and incorporate them by reference.

80. Adams is listed as the inventor on the face of United States Patent No. 7,653,766 (the "'766 Patent") entitled "Time-Gap Defect Detection Apparatus and Method."

81. AFTG purports to own by assignment all rights, title, and interests in the '766 Patent.

82.    VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that no valid and enforceable claim of the '766 patent is infringed by VIA Technologies, VIA USA, Centaur and VIA CPU.

83.    VIA Technologies, VIA USA, Centaur and VIA CPU seek a judicial determination and declaration that the '766 patent is invalid because it fails to satisfy the conditions and requirements for patentability as set forth, *inter alia*, in Sections 101, 102, 103, and/or 112 of Title 35 of the United States Code.

## THIRTEENTH CLAIM

## DECLARATORY JUDGMENT REGARDING  ALLEGED TRADE SECRETS

84.    VIA Technologies, VIA USA, Centaur and VIA CPU hereby restate and reallege the allegations set forth in paragraphs 1 to 83 and incorporate them by reference.

85.    Plaintiffs hereby seek a declaration that none of the Plaintiffs misappropriated any trade secret as alleged in the Amended Complaint.  *See* Exhibit A, ¶¶ 28 – 36.

86.    Plaintiffs further seek a declaration that any otherwise cognizable claim by Defendants for misappropriation of trade secrets is barred by laches and/or the applicable statute of limitations.

## DEMAND FOR JURY TRIAL

87.    Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, demand a trial by jury on all claims and issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, VIA Technologies, VIA USA, Centaur and VIA CPU request judgment as follows:

1.    Declaring that no valid and enforceable claim of the PMAA and AFTG patents is infringed by VIA Technologies, VIA USA, Centaur and VIA CPU;

COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY    Page 13

2. Declaring that all of the claims of the PMAA and AFTG Patents are invalid;

3. Declaring that Defendants and their officers, employees, agents, alter egos, attorneys, and any persons in active concert or participation with them be restrained and enjoined from further prosecuting or instituting any action against VIA Technologies, VIA USA, Centaur and VIA CPU claiming that the PMAA and AFTG patents are valid, enforceable, infringed, or from representing that the products or services of VIA Technologies, VIA USA, Centaur and VIA CPU infringe the PMAA and AFTG patents;

4. Declaring that VIA Technologies, VIA USA, Centaur and VIA CPU have not misappropriated any trade secrets as alleged by Defendants, and that Defendants do not possess or have any claim for misappropriation for trade secrets.

5. Declaring this case exceptional under 35 U.S.C. § 285 awarding VIA Technologies, VIA USA, Centaur and VIA CPU their attorneys' fees and costs in connection with this case; and

6. Awarding VIA Technologies, VIA USA, Centaur and VIA CPU such other and further relief as the Court deems just and proper.

DATED:  March 9, 2011

**BUETHER JOE & CARPENTER, LLC**

By: */s/ Brian A. Carpenter*
    Brian A. Carpenter
    CA Bar No. 262349
    Brian.Carpenter@BJCIPLaw.com
    1700 Pacific Avenue,
    Suite 2390
    Dallas, Texas  75201
    Telephone:   (214) 466-1273
    Facsimile:   (214) 635-1829

**ATTORNEYS FOR
VIA TECHNOLOGIES, INC.,
VIA TECHNOLOGIES, INC. [USA],
CENTAUR TECHNOLOGY, INC., AND
VIA TECHNOLOGIES, CPU, INC.**

# EXHBIT A

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

OCT 25 2010

Stephan Harris, Clerk
Cheyenne

Randall B. Reed, Wyo. Bar No. 5-2863
DRAY THOMSON AND DYEKMAN, PC
204 E. 22nd St.
Cheyenne, WY 82001
Telephone:     (307) 634-8891
Facsimile:      (307) 634-8902

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| AFTG-TG, L.L.C., a Wyoming limited liability company, PHILLIP M. ADAMS & ASSOCIATES, L.L.C., a Utah limited liability company, | **AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND TRADE SECRET THEFT** |
| Plaintiffs, | Civil No. 10-CV-230-D |
| vs. | |
| FEATURE INTEGRATION TECHNOLOGY INC., a Taiwan corporation, VIA TECHNOLOGIES, INC., a Taiwan corporation, VIA TECHNOLOGIES, INC., USA, a California corporation, CENTAUR TECHNOLOGY, a Texas Corporation, VIA TECHNOLOGIES CPU, INC., a Texas corporation, SILICON INTEGRATED SYSTEMS CORPORATION, a Taiwan corporation, SILICON INTEGRATED SYSTEMS CORPORATION (USA), a California corporation, STANDARD MICROSYSTEMS CORPORATION, a Delaware corporation, | Judge: Downes |
| Defendants. | |

Plaintiffs AFTG-TG, L.L.C. ("AFTG") and Phillip M. Adams & Associates, L.L.C. ("Adams") brings this action for the infringement of multiple U.S. Patents. This is a claim for patent infringement and arises under the patent laws of the United States, Title 35 of the United States Code. This Court has exclusive jurisdiction over the subject matter of this Complaint under 28 U.S.C. § 1338(a). Venue is proper in this District under 28 U.S.C. §§ 1391(c)-(d) and 1400(b).

## PLAINTIFFS

1.      Adams is a Utah limited liability company with its principle place of business now in Wyoming. Adams owns all right, title and interest in and has standing to sue for infringement of the United States patents identified below:

- 5,983,002 titled "Defective Floppy Diskette Controller Detection Apparatus and Method" ("the '002 patent");

- 6,401,222 titled "Defective Floppy Diskette Controller Detection Apparatus and Method" ("the '222 patent");

- 6,687,858 entitled "Software-Hardware Welding System" ("the '858 patent");

- 7,251,752 titled "Computerized Product Improvement Apparatus and Method" ("the '752 patent");

- 7,069,475 entitled "Software-Hardware Welding System" ("the '475 patent"); and

- 7,409,601 entitled "Read-Write Function Separation Apparatus and Method" ("the '601 patent");

(collectively, "Adams patents-in-suit").

2

2.    AFTG is a Wyoming limited liability company with its principal place of business in Wyoming. AFTG owns all right, title and interest in and has standing to sue for infringement of the United States patents identified below:

- 6,691,181 titled "Programmatic Time-Gap Defect Detection Apparatus and Method" ("the '181 patent");

- 7,249,203 titled "Programmatic Time-Gap Defect Detection Apparatus and Method" ("the '203 patent");

- 7,472,207 titled "Optimized-Incrementing, Time-Gap Defect Detection Apparatus and Method" ("the '207 patent");

- 6,842,802 titled "Programmatic Time-Gap Defect Correction Apparatus and Method" ("the '802 patent");

- 7,366,804 titled "Programmatic Time-Gap Defect Correction Apparatus and Method" ("the '804 patent"); and

- 7,653,766 titled "Time-Gap Defect Detection Apparatus and Method" ("the '766 patent");

(collectively, the "AFTG patents-in-suit"). The Adams patents-in-suit and the AFTG patents-in-suit are collectively referred to hereinafter as the "Patents-in-Suit".

3.    Dr. Phillip M. Adams heads plaintiff Adams and AFTG, and resides in Wyoming. He has a Ph.D. in applied computer science, a D.Sc. in engineering and over 30 years of experience in the computer industry. Dr. Adams has served on the faculty of major universities and holds numerous patents. In the late 1980s, Dr. Adams characterized a defect in the NEC 765A floppy disk controller (FDC) present in most personal computers at the time. This defect

3

caused the random destruction or corruption of data without proper notification to the user that data had been destroyed or corrupted.

4.      The random destruction or corruption of data in computers is a serious, and potentially cataclysmic, problem. Computers are used throughout society and the data integrity of computers is the lifeblood of the information age. The public relies upon the integrity of data stored by computers and exchanged between them to support virtually all aspects of society, including the multitude of financial transactions, the accurate and effective diagnoses and treatment of illnesses and the proper design and construction of automobiles, aircraft, bridges, dams, office buildings and various other structures and devices.

5.      The scope and seriousness of the FDC-related defects characterized by Dr. Adams were illustrated by the $2.1 billion *Toshiba* class-action settlement in the Eastern District of Texas. In addition to the *Toshiba* class-action settlement, the United States Government settled False Claims Act claims against Toshiba for $33.5 million. The State of California settled California State False Claims Act claims against Toshiba for $33 million. Also, several billion-dollar class-action lawsuits are presently pending against different computer companies in various federal and state courts because of such defects built into various computers.

6.      In the 20 plus years since Dr. Adams characterized the NEC 765A defect, Dr. Adams has discovered related data corruption defects and has devoted thousands of hours to developing solutions, alerting various federal and state governments, computer companies and private purchasers to such defects and assisting computer manufacturers to acknowledge and remedy these defects. In addition, Dr. Adams has developed several patented computer

4

technologies that address such defects. First, he developed patented computer technology (both hardware and software) that detect which computers are defective. Second, he developed patented solutions (both hardware and software) that resolve the defects found in such computers.

7. Hewlett Packard (one of the world's leaders in personal computers) obtained a license from Adams, and then placed Adams' solution on the Internet for all its customers throughout the world. Thus, any Hewlett Packard customer could go to this Internet website, download the solution and fully repair such defects in his or her computer. The website included notice of Adams' patent. Compaq (before it merged with Hewlett Packard) also obtained a license under Dr. Adams' patent.

8. In May of 2005, in compliance with the terms of the Hewlett Packard and Compaq license agreements, Adams was forced to file suit against numerous companies in the computer industry for the theft of his trade secrets and infringement of patented technology owned by Adams (the "Winbond Litigation"). Previously, Adams had been involved and occupied in litigation with Gateway Computer Company from 2002 until 2006 when Gateway settled on the first day of trial. Adams has been involved in litigation since at least 2002 against computer companies such as Gateway, Sony, Dell, IBM, Lenovo, Quanta, Fujitsu, and Dell.

9. Through the course of the Winbond Litigation it was discovered that Winbond's infringing chips had been distributed throughout the computer industry and had been knowingly incorporated into the Defendants products.

5

10. In May 2010 Adams retained the firm of Quinn Dumke LLC to approach each of the Defendants, under F.R.E. 408, with the hope of entering into a mutually acceptable agreement to address the suspected patent infringement without costly litigation.

11. Instead of entering into fruitful negotiations concerning what was then thought to be clear liability for infringement, Defendants instead determined that it would be more beneficial to either wait for the determination of infringement in the Winbond Litigation, or request that Adams supply claim charts and enter into a level of discovery more suited for Markman hearings during litigation.

12. Throughout the course of the Winbond Litigation many companies that were party to the suit entered into settlement agreements with Adams, but the defendants Winbond Electronics Corporation ("Winbond"), ASUSTek Computer, Inc., ASUS Computer International, Micro-Star International, and Micro-Star USA obstinately maintained a position of non-infringement.

13. Defendant ITE Tech, Inc. ("ITE") has had a default judgment of patent infringement and misappropriation of trade secrets entered and is awaiting the Court's determination of jurisdiction prior to providing enforcement.

14. On October 5, 2010 a jury of 12 unanimously determined that Winbond had infringed all asserted claims of Adams '002 patent.

15. As a result of the verdict and default judgment it is clear that all Winbond or ITE super I/O chips with an Opus International based FDC core ("Infringing Chips") infringe the patent in suit. Additionally, it is believed that chips from VIA Technologies, Inc. ("VIA"),

Silicon Integrated Systems Corporation ("SIS"), and Standard Microsystems Corp. ("SMSC") use the same infringing architecture in their chips ("Dependent Chips"), which have been incorporated into the defendants' products.

16.     The Defendants' knowing and intentional use, manufacture and/or importation of infringing methods, articles of manufacture, and products subject them to, at a minimum, liability under 35 U.S.C § 271 (a), (b), (c) and (g).

## DEFENDANTS

17.     Feature Integration Technology Inc. ("Fintek") is a company organized under the laws of Taiwan, with a place of business at 3F-7, No.36, Tai Yuen St., Chupei City, Hsinchu, Taiwan, R.O.C.; and all U.S. subsidiaries, if any.

18.     VIA Technologies, Inc. is a company organized under the laws of Taiwan, with a place of business at 1F, 531, Chung-Cheng Rd., Hsin-Tien, Taipei 231, Taiwan, R.O.C.; and all U.S. subsidiaries. (VIA Technologies, Inc., VIA Technologies, Inc., USA, Centaur Technology, and VIA Technologies CPU, Inc. are collectively referred to as "VIA").

19.     VIA Technologies, Inc., USA is a California corporation with a place of business at 940 Mission Court, Fremont, CA 94539, U.S.A.

20.     Centaur Technology is a Texas corporation with a place of business at 7600-C N. Capital of Texas Hwy, Suite 300, Austin, Texas 78731, U.S.A.

21.     VIA Technologies CPU, Inc. is a Texas corporation with a place of business at 701 Highlander Blvd., Suite 300, Arlington, Texas 76015, U.S.A.

7

22.    Silicon Integrated Systems Corporation is a company organized under the laws of Taiwan, with a place of business at No.180, Sec.2, Gongdaowu Rd., Hsin-Chu, Taiwan 300, R.O.C.  (Silicon Integrated Systems Corporation and Silicon Integrated Systems Corporation (USA) are collectively referred to as "SIS").

23.    Silicon Integrated Systems Corporation (USA) is a California corporation with a place of business at 838 N. Hillview Dr., Milpitas, California 95035, U.S.A.

24.    Standard Microsystems Corporation ("SMSC") is a Delaware corporation with a place of business at 80 Arkay Dr., Hauppauge, NY 11788, U.S.A.  (All defendant parties are collectively referred to as "Defendants").

## COUNT I
## ACTS OF PATENT INFRINGEMENT

25.    Defendants have infringed various claims of each of the patents-in-suit in violation of 35 U.S.C. § 271 through, among other activities, the manufacture, use, importation, sale and/or offer for sale of computer chips, motherboards, computers and other products, as well as using infringing methods including but not limited to testing of Defendants' products as a part of the manufacturing process.  In addition to their direct infringement, Defendants have also knowingly and intentionally induced others to infringe under 35 U.S.C. § 271(b) (such as its customers and end-users in this judicial district and throughout the United States) by intentionally aiding, assisting and encouraging their infringement, and defendants have knowingly contributed to the infringement of others under 35 U.S.C. § 271(c) (such as its customers and end-users in this judicial district and throughout the United States) by supplying

8

their technical know-how and infringing computer chips and motherboards (which are non-staple articles of commerce having no substantial non-infringing use).  The infringement that has occurred is at least of the following claims of the following patents:

| Patent Number | Claims |
|---------------|--------|
| 5,983,002 | 1-6; 8-15 |
| 6,401,222 | 1-7; 9-16; 18-20 |
| 6,687,858 | 1; 3-4 |
| 7,251,752 | 1; 3; |
| 6,691,181 | 1-3; 10-11; 12-14 |
| 7,249,203 | 1; 10-11; 12-14 |
| 7,472,207 | 1; 10-12 |
| 7,069,475 | 6; 14-17; 21; 23 |
| 7,409,601 | 1-4; 6-7; 9-12; 14-15 |
| 6,842,802 | 1-29 |
| 7,366,804 | 1-30 |
| 7,653,766 | 1-19 |

## NOTICE AND WILLFULNESS

26.     On information and belief, all Defendants have had actual and/or constructive notice of their infringement of the patents-in-suit, including actual pre-complaint notice.

27.     On information and belief, all Defendants' infringement has been willful and deliberate as to the patents-in-suit and has occurred with the knowledge that chips and cores of Winbond and ITE design have at a minimum infringed Adams' '002 patent in violation of 35 U.S.C. § 284.  Defendants' infringement has injured and will continue to injure Adams, unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further manufacture, use, importation, offers for sale and/or sale of Defendants' products and/or services that contain infringing technology; including but not limited to

9

Winbond's and/or ITE's core; or fall within the scope of any claim of any of the patents-in-suit.

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS

28.     Plaintiff realleges and incorporates Paragraphs 1-27 above as Paragraphs 1-27 of Count II.

29.     In a prior lawsuit in the Tenth Circuit judicial district of Utah, Adams v. Gateway Inc., No. 2:02-CV-01065, Adams discovered that Gateway had spoliated evidence and improperly attempted to hide damaging documents by asserting that the damaging documents were privileged.  Thereafter, the court ruled that Gateway's assertions of privilege were improper and sanctioned Gateway for improperly asserting privilege in an effort to hide and cover up damaging documents.  Adams v. Gateway, 2003 WL 23787856 (D.Utah 2003), *affirmed and ordering production of documents on September 14, 2004*, 2004 WL 2061884 (D.Utah 2004)

30.     The court thereafter compelled Gateway to produce certain allegedly "privileged" documents demonstrating that ASUS, Winbond and MSI had obtained an unauthorized and stolen copy of Adams' patented and trade secret technology in 2000, and that ASUS, Winbond and ITE were using the stolen copy of Adams' technology in their manufacture, assembly, and testing of computer products.

31.     In such documents, Winbond, ASUS and ITE admitted that they had obtained copies of Adams' "Detector" programs, proprietary and confidential software programs which Dr. Adams invented.  Furthermore, Winbond and Asus admitted to reverse engineering Adams' Detector programs to determine and distribute Adams trade secrets.  The Detector programs

10

allow a user to determine defects in a computer, and the documents revealed that Winbond, ASUS and MSI actually used the Detector programs in the testing and manufacturing FDC chips and motherboards that contain them.

32.     Winbond and ASUS conspired to pirate Adams' Detector programs.   ASUS obtained Adams' Detector testing software and used it to produce its own test utility or software (which it called 1fdc.exe and w2sec.exe) and test its motherboards and Winbond's chops. Internal e-mails and notes that Winbond produced during the Gateway litigation clearly demonstrate that ASUS worked closely with Winbond in pirating and using Adams software and modifying Winbond chips. ITE also misappropriated Adams software and used it to test and modify its chips.

33.     The Detector programs contained trade secrets of Adams, including, among other things, a specific method to allow the detection process to be performed on any byte in a sector. Adams maintained the Detector programs in confidence, and when it licensed the programs, Adams required in writing that its licensees keep the programs confidential.  Adams maintained the confidentiality of its Detector programs' trade secrets until the aforementioned '222 patent issued on June 4, 2002.  Until that time, Adams' Detector programs' trade secrets were valuable; for example; Compaq Computers licensed the Adams Detector programs, among other patented technology, for $31.5 million.

34.     Through the course of the Winbond Litigation it was determined that additional companies, the Defendants, were knowingly using Adams' proprietary technology that was protected by trade secret.

11

As a result of these companies knowing use of the material they are liable for trade secret misappropriation.

35.    Adams Detector programs were clearly labeled as the property of Adams, and the current defendants knew, or had reason to know the property to be misappropriated trade secret material. Defendants also knew or had reason to know that the Adams Detector programs were acquired by improper means.

36.    Defendants' conduct violated the Wyoming trade secret common law.

## PRAYER FOR RELIEF

WHEREFORE, Adams respectfully requests this Court enter judgment against Defendants and against their subsidiaries, affiliates, agents, servants, employees and all persons in active concert or participation with them granting the following relief:

A) An award of damages adequate to compensate Adams for the patent infringement by Defendants that has occurred, together with prejudgment interest from the date infringement of each respective patents-in-suit began together with costs, said damages to be no less than a reasonable royalty;

B) An award to Adams of all damages so determined for willful infringement, including an increase of the compensatory damages by up to three times, in accordance with 35 U.S.C. § 284;

C) A finding that this case is exceptional and an award to Adams of all remedies available under 35 U.S.C. § 285, including the costs of this action and reasonable attorney's fees;

D) A permanent injunction prohibiting further infringement, inducement and contributory infringement of the patents-in-suit;

E)   For its trade secret misappropriation claim against Defendants, an award of all appropriate unjust enrichment damages, including the disgorgement of all profits denied from the misappropriation; and

F)  Such other and further relief as this Court or a jury may deem proper and/or just.

Dated: October 25, 2010

DRAY, THOMSON AND DYEKMAN, PC

**REDACTED**

By: _____

Randall B. Reed, Wyo. Bar No. 5-2863
DRAY, THOMSON AND DYEKMAN, PC
204 E. 22nd St.
Cheyenne, WY 82001
Telephone:(307) 634-8891
Facsimile: (307) 634-8902

# EXHBIT B

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

MAR 0 7 2011

Stephan Harris, Clerk
Cheyenne

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

---

AFTG-TG LLC, *et al.*,

        Plaintiffs,

        vs.

FEATURE INTEGRATION
TECHNOLOGY, INC, *et al.*,

        Defendants.

Case No. 10-CV-230-F

---

## ORDER DISMISSING CLAIMS AGAINST DEFENDANTS VIA TECHNOLOGIES, INC., VIA TECHNOLOGIES, INC. USA, CENTAUR TECHNOLOGY, AND VIA TECHNOLOGIES CPU, INC. FOR LACK OF PERSONAL JURISDICTION

---

This matter comes before the Court on a motion filed by VIA Technologies, Inc., VIA

Technologies, Inc. USA, Centaur Technology, and VIA Technologies CPU, Inc. Doc. No.

34.[1] In brief, they contend that the patent action filed by Plaintiffs should be either dismissed

---

[1] These four defendants are the only parties to the motions currently addressed by the Court. In addition, the parties' briefs for these and other motions in related cases are identical to each other. Consequently, the Court's orders, although not identical, are substantially similar. And, although there are other defendants in this action, the Court will use "Defendants" to refer to the movants in the motion under consideration.

or transferred from this district. The Court, having carefully considered the arguments of the parties, concludes that it may not assert personal jurisdiction over Defendants, and the claims against them must be dismissed. Because of this conclusion, the Court does not reach the remaining arguments made by the parties.

## BACKGROUND

Plaintiffs filed a complaint in this Court on October 18, 2010, alleging that Defendants infringed several patents that had been assigned to Plaintiffs. Plaintiffs also claimed that,

> [i]n addition to their direct infringement, Defendants have also knowingly and intentionally induced others to infringe under 35 U.S.C. § 271(b) (such as its customers and end-users in this judicial district and throughout the United States) by intentionally aiding, assisting and encouraging their infringement, and defendants have knowingly contributed to the infringement of others under 35 U.S.C. § 271(c) (such as its customers and end-users in this judicial district and throughout the United States) by supplying their technical know-how and infringing computer chips and motherboards (which are non-staple articles of commerce having no substantial non-infringing use).

Complaint, ¶ 30. The complaint is not clear about the full nature of the patented technology, but appears to allege that the patents generally describe a method of ensuring data integrity in computer systems as it is transferred from one storage medium to another. Plaintiffs also alleged misappropriation of trade secrets under Wyoming law.

2

Plaintiffs also filed substantially similar complaints against various other parties in three other cases, numbers 10-CV-227-F, 10-CV-228-F, and 10-CV-229-F. A number of the defendants in those cases—and in this one—have filed motions similar to those addressed in this order.

## *ANALYSIS*

Defendants filed a motion to dismiss the case for lack of personal jurisdiction. Doc. No. 34. Alternatively, Defendants ask that the Court dismiss for failure to state a claim for which relief may be granted or require a more definitive statement pursuant to Fed. R. Civ. P. 12(e). Given that jurisdiction is a threshold requirement to any other action this Court may take, it is appropriate to address that question first.

A district court exercises personal jurisdiction in patent cases pursuant to the long-arm statute of the state jurisdiction in which it sits. *See, e.g., Trintec Indus. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005) (applying law of the District of Columbia in patent infringement suit). This is generally a two-step analysis, first looking to the state long-arm statute, then determining whether assertion of jurisdiction comports with due process requirements. *Id.* This analysis collapses into a single due process question, however, when the state long-arm statute reaches the limits of due process. *Id.* This is the case in Wyoming, where Wyo. Stat. Ann. § 5-1-107(a) explicitly extends jurisdiction to any basis

3

consistent with the United States or Wyoming constitutions. *E.g., Markby v. St. Anthony Hosp. Sys.*, 674 P.2d 1068, 1070 (Wyo. 1982).

If the Court does not hold an evidentiary hearing, it may base the personal jurisdiction decision on affidavits or other written material. *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). If the Court relies on written materials, the plaintiff need only make a *prima facie* showing that exercise of personal jurisdiction is appropriate. *Id.* "[A] district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Id.*

The key inquiry in the due process analysis is whether the defendant has purposefully established minimum contacts in the forum state. *Patent Rights Protection Group, LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010).

> "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum[], thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). Contacts with the forum that are "random", [sic] "fortuitous," or "attenuated," or that result from the "unilateral activity of another party or third person" are not sufficient to establish personal jurisdiction. *Burger King [Corp. v. Rudzewicz]*, 471 U.S. [462,] 475, 105 S. Ct. 2174 [(1985)].

*Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1411-12 (Fed. Cir. 2009).

4

Even if minimum contacts exist, however, exercise of jurisdiction must comport with fair play and substantial justice. *Patent Rights*, 603 F.3d at 1369. The Court may consider many factors apart from the contacts with the jurisdiction, including a defendant's burden, the forum state's interest, the plaintiff's interests, the judicial system's interest in efficient resolution of disputes, and the broader policies of the states in furthering their social agendas. *E.g.*, *id.*

Jurisdiction may also be characterized as either general or specific. In order for there to be general jurisdiction, a defendant must have "'continuous and systematic general business contacts'" with the forum state. *Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009) (quoting *Helecopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868 (1984)).

The test for specific jurisdiction is somewhat more defined. "The Federal Circuit applies a three prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Comms., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010).

Plaintiffs do not provide an analysis for specific jurisdiction, choosing to exclusively

5

argue that specific jurisdiction is appropriate. The difficulty in this analysis is that there is no evidence or allegation that indicates specific jurisdiction is appropriate. The complaint's bare formulaic accusation is insufficient to be considered an uncontroverted allegation demonstrating that exercise of specific jurisdiction is appropriate. The complaint merely recites the language of the statutory patent infringement with additional parentheticals indicating that others have also committed infringement, some of them in Wyoming. There is no indication that Defendants directed any activities toward Wyoming, or that Wyoming activities were related to the instant action. There is nothing in the complaint that permits a reasonable inference that specific jurisdiction is appropriate.

The misappropriation of trade secrets claim is likewise insufficient. Plaintiffs allege improper conduct of non-parties, then state that "additional companies, the Defendants, were knowingly using . . . proprietary technology that was protected by trade secret." Complaint ¶ 39. There is no indication that any of this use occurred in Wyoming. The complaint is insufficient to establish specific personal jurisdiction.

Neither do the exhibits before the Court provide any more support. Plaintiffs' Exhibit A is a printout of a digital "shopping cart" from a company called Logic Supply, and it shows a number of VIA motherboards, and one Pico-ITX formfactor builder kit available for purchase. There is no indication that these motherboards include the allegedly fringing

technology (although Defendants in their reply admit that four of the 13 products include the allegedly infringing technology).

Exhibit B is a printout from the web site of VIA Technologies, Inc. that shows a press release announcing net sales from September, 2010. There is no indication that any of these sales occurring in Wyoming. The release does refer to VIA Technologies, Inc.'s "global network link[ing] the high tech centers of the US, Europe and Asia." Ex. B. There is no indication that Wyoming is included in this global network.

Exhibit C is another printout from VIA Technology Inc.'s web site, this time the VIA Corporate Overview. The page also discusses the company's "global network," and also describes it as a market leader in several areas. Nothing in this exhibit suggests any contact with Wyoming.

In summary, Plaintiffs do not allege sufficient facts in the complaint to show minimum contacts with Wyoming, and they have put forth no exhibits that demonstrate these contacts. Plaintiffs have failed to make a *prima facie* showing that this Court may exercise personal jurisdiction over Defendants.

This is not to say that Plaintiffs are incorrect in using a stream of commerce analysis. They simply do not meet their burden. The Federal Circuit has generally been very sympathetic to the stream-of-commerce theory of minimum contacts. In *Beverly Hills Fan*

*Co. v. Royal Sovereign Corp.*, the Federal Circuit held that placing an item in an established distribution channel knowing that it would end up in the forum was sufficient contacts to establish personal jurisdiction. 21 F.3d 1588, 1566 (Fed. Cir. 1994).

It is, however, the facts that distinguish *Beverly Hills Fan* from this case. In *Beverly Hills Fan*, a plaintiff's investigator had actually visited a retailer in the forum state and bought an infringing ceiling fan from that retailer. *Id.* at 1560. The fan included a manual identifying the defendant as the manufacturer, and a warranty inviting the consumer to contact the defendant for service. *Id.* In the instant case, however, there is no evidence that Defendants reached out and knowingly had any contact with Wyoming. As discussed above, the closest evidence is the contributory infringement and inducement claims that refer generally to users in Wyoming. These claims are insufficient to permit the exercise of the Court's jurisdiction.

Accordingly:

IT IS ORDERED that Defendants VIA Technologies, Inc., VIA Technologies Inc. USA, Centaur Technology, and VIA Technologies CPU Inc.'s Motion to Dismiss, Doc. No. 34, is GRANTED.

IT IS FINALLY ORDERED that all Plaintiffs' claims against Defendants VIA Technologies, Inc., VIA Technologies Inc. USA, Centaur Technology, and VIA

Technologies CPU Inc. are DISMISSED without prejudice.

Dated this _____ day of March, 2011.

**REDACTED**

NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE

# CIVIL COVER SHEET

JS 44 (Rev. 12/07) (CAND Rev 1/10)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
VIA TECHNOLOGIES, INC., et al

## DEFENDANTS
AFTG-TG, L.L.C. and PHILLIP M. ADAMS & ASSOCIATES L.L.C.

**(b)** County of Residence of First Listed Plaintiff  Taiwan Corporation
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant     Laramie County, Wyoming
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Brian A. Carpenter, Buether Joe & Carpenter, LLC, 1700 Pacific Avenue., Suite 2390, Dallas, Texas 75201, Telephone: 214-466-1273; Facsimile: 214-635-1829; Email: Brian.Carpenter@BJCIPLaw.com

Attorneys (If Known)

E-filing

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1  U.S. Government Plaintiff
- [X] 3  Federal Question (U.S. Government Not a Party)
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Med. Malpractice | [ ] 625 Drug Related Seizure | 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury — | of Property 21 USC 881 | | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| & Enforcement of Judgment | Slander | [ ] 368 Asbestos Personal | [ ] 640 R.R. & Truck | | [ ] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Injury Product | [ ] 650 Airline Regs. | [ ] 820 Copyrights | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | Liability | Liability | [ ] 660 Occupational | [X] 830 Patent | [ ] 480 Consumer Credit |
| Student Loans | [ ] 340 Marine | | Safety/Health | [ ] 840 Trademark | [ ] 490 Cable/Sat TV |
| (Excl. Veterans) | [ ] 345 Marine Product | **PERSONAL PROPERTY** | [ ] 690 Other | | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment | Liability | [ ] 370 Other Fraud | | | [ ] 850 Securities/Commodities/ |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | [ ] 380 Other Personal | [ ] 710 Fair Labor Standards | [ ] 861 HIA (1395ff) | [ ] 875 Customer Challenge |
| [ ] 190 Other Contract | Product Liability | Property Damage | Act | [ ] 862 Black Lung (923) | 12 USC 3410 |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | [ ] 385 Property Damage | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | Product Liability | [ ] 730 Labor/Mgmt.Reporting | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| | | **PRISONER** | & Disclosure Act | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PETITIONS** | [ ] 740 Railway Labor Act | | [ ] 893 Environmental Matters |
| | | | [ ] 790 Other Labor Litigation | | [ ] 894 Energy Allocation Act |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate | [ ] 791 Empl. Ret. Inc. | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | Security Act | | Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ | **Habeas Corpus:** | | [ ] 870 Taxes (U.S. Plaintiff | [ ] 900 Appeal of Fee |
| [ ] 240 Torts to Land | Accommodations | [ ] 530 General | | or Defendant) | Determination |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party | Under Equal Access |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | **IMMIGRATION** | 26 USC 7609 | to Justice |
| | Employment | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of |
| | [ ] 446 Amer. w/Disabilities - | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus – | | State Statutes |
| | Other | | Alien Detainee | | |
| | [ ] 440 Other Civil Rights | | [ ] 465 Other Immigration | | |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity):**
28 United States Code, §§ 2201, 2202, 35 U.S.C. § 1 et seq.

Brief description of cause:
Declaratoy Judgment for Non-Infringement and Invalidity of Patents

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".  Case No. 5:10cv05983-HRL (Nuvoton) & Case No. 3:10cv04458-EMC (Wistron)

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2) (PLACE AND "X" IN ONE BOX ONLY)
[X] SAN FRANCISCO/OAKLAND     [ ] SAN JOSE     [ ] EUREKA

DATE
3/9/2011

SIGNATURE OF ATTORNEY OF RECORD
/s/ Brian A. Carpenter

JS 44 Reverse (Rev. 12/07)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

| From: | ECF-CAND@cand.uscourts.gov |
|---|---|
| Sent: | Thursday, March 10, 2011 1:34 PM |
| To: | efiling@cand.uscourts.gov |
| Subject: | Activity in Case 3:11-cv-01133-EMC Via Technologies, Inc. et al v. AFTG-TG, L.L.C. et al Complaint |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

U.S. District Court
Northern District of California
**Notice of Electronic Filing or Other Case Activity**

NOTE: Please read this entire notice before calling the Help Desk. If you have questions, please email the Help Desk by replying to this message; include your question or comment along with the original text.

Please note that these Notices are sent for all cases in the system when any case activity occurs, regardless of whether the case is designated for e-filing or not, or whether the activity is the filing of an electronic document or not.

If there are **two** hyperlinks below, the first will lead to the docket and the second will lead to an e-filed document.
*If there is no second hyperlink, there is no electronic document available .*
See the FAQ posting 'I have a Notice of Electronic Filing that was e-mailed to me but there's no hyperlink...' on the ECF home page at https://ecf.cand.uscourts.gov for more information.

The following transaction was received from entered on 3/10/2011 11:33 AM PST and filed on 3/9/2011

| Case Name: | Via Technologies, Inc. et al v. AFTG-TG, L.L.C. et al |
|---|---|
| Case Number: | 3:11-cv-01133-EMC |
| Filer: | Via Technologies, Inc. |
| | Centaur Technology, Inc. |
| | VIA Technologies CPU, Inc. |

**Document Number:** 1(No document attached)

**Docket Text:**
**COMPLAINT for Declaratory Judgment with Jury Demand against AFTG-TG, L.L.C., Phillip M. Adams & Associates, L.L.C. ( Filing fee $ 350, receipt number 34611057309.). Filed by Via Technologies, Inc.(a Taiwan corporation), Via Technologies, Inc.(a California corporation), VIA Technologies CPU, Inc., Centaur Technology, Inc. (mjj2, COURT STAFF) (Filed on 3/9/2011)**

1

**3:11-cv-01133-EMC Notice has been electronically mailed to:**

Brian Andrew Carpenter    brian.carpenter@BJCIPlaw.com, cyndee.gustafson@BJCIPlaw.com, scarlett.spradlin@BJCIPLaw.com

**3:11-cv-01133-EMC Please see General Order 45 Section IX C.2 and D; Notice has NOT been electronically mailed to:**